**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 2:23-cr-00092-1

EDDIE DAIVON MORGAN,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Suppress Evidence* (Document 34), the *Memorandum in Support of Defendant's Motion to Suppress Evidence* (Document 35), the *Response of the United States in Opposition to Defendant's Motion to Suppress Evidence* (Document 38), and the *Defendant's Reply to the Government's Response to Defendant's Motion to Suppress Evidence* (Document 39), as well as all exhibits.   The Court has also considered the testimony of Detective Dodrill of the Oak Hill Police Department, taken during the suppression hearing held on June 2, 2026.   For the reasons stated herein, the Court finds that the motion to suppress should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant, Eddie Daivon Morgan, was charged with felon in possession of a firearm via an *Indictment* (Document 1) returned on June 1, 2023.   The single-count indictment alleges that he possessed two firearms on or about November 30, 2022, at or near Oak Hill, Fayette

County, West Virginia.   The firearms were found during a traffic stop, and the Defendant seeks to suppress all evidence seized as a result of that traffic stop.

West Virginia emergency services received a call on November 18, 2022, about a shooting at a residence in Scarbro, West Virginia.   Fayette County Sheriff deputies responded to the scene and discovered an individual who had been shot.   That individual stated that the Defendant, who he referred to as "Gutter" and described as a black male with face tattoos, arrived at the residence earlier that evening.   The individual further stated that he was standing outside the residence when he became involved in a verbal altercation with the Defendant, who threatened to "shoot up the place" after being told to leave.   He stated that moments later, the Defendant fired two shots from a handgun, one of which struck the individual in his right arm.   Based on this information, as well as other evidence recovered at the scene, officers obtained two warrants for the Defendant's arrest on charges for malicious wounding and wanton endangerment.[1] Detective Brandon J. Dodrill of the Oak Hill Police Department was advised of the outstanding warrants. Detective Dodrill was familiar with the Defendant and recalled that he had a facial tattoo of a "G" above his nose.

On November 29, 2022, just before midnight, Detective Dodrill received information that the Defendant was at Apartment 17 in the Maple Court Apartments in Oak Hill, West Virginia. Detective Dodrill testified that he received this information from an informant who had provided reliable information and tips in the past.   The informant, who was present with the Defendant, informed Detective Dodrill that the Defendant would be leaving soon.   Detective Dodrill testified that the informant had previously provided him with information that a woman named Jenine Fleshman would be transporting the Defendant to Maple Court Apartments.   He also testified that

---

[1]  The warrants did not contain any information regarding the physical description of the Defendant.

2

although the informant did not provide him with any information regarding the description of the vehicle the Defendant would be arriving or leaving in, Detective Dodrill was familiar with the vehicle that Ms. Fleshman drove based on prior contact.

Detective Dodrill, aware that the Defendant had active arrest warrants, traveled to the Maple Court Apartments and began surveillance from across the street using binoculars. He observed three women and a man wearing a camouflage face mask leave the apartment. The face mask completely covered the man's face except for his eyes and the bridge of his nose. Detective Dodrill believed the man matched the height, weight and build of the Defendant, based on prior interactions with the Defendant. The Detective described the man as a Black male and testified that he could see the man's hands through his binoculars. Detective Dodrill testified that around the same time the man and women were leaving, he received a call from the informant notifying him that the Defendant was leaving. The Detective observed two of the women and the man enter a small sedan, and the other woman enter another vehicle.[2] As the vehicles were leaving, Detective Dodrill identified one of the vehicles as Ms. Fleshman's.

Detective Dodrill followed both vehicles and initiated a traffic stop once other officers arrived to provide backup.[3] He and other officers approached the small sedan and noticed the Defendant laying in the backseat. Detective Dodrill testified that he approached the vehicle from the rear right side and directed the Defendant to unlock the doors and to not put his hands down, while another officer approached from the left rear side. He further testified that he was able to

---

[2] The Court notes that based on the provided bodycam footage, the two vehicles were a blue Chevy Aveo and a blue Chevy Monte Carlo respectively.
[3] There is no indication that Detective Dodrill initiated this traffic stop based on any traffic violation.

3

confirm that the man was the Defendant based on his observation through the open part of the facemask of the letter "G" tattooed above the Defendant's nose.

Officers removed the Defendant from the vehicle, and after being removed, the Defendant admitted that he was armed.   Officers retrieved two handguns, an SCCY 9mm handgun and a Glock 42 .380 caliber handgun, from the Defendant's waistband.   The Defendant was escorted to a police car, where he was further searched.   Officers found two smartphones and a small bag of suspected methamphetamine [4] on the Defendant's person.   Officers searched the vehicle. However, the United States indicated during the suppression hearing that it will not seek to use any evidence derived from the vehicle search.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law.   *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005).   On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence.   *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).   However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence.   *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

The Defendant challenges both the stop and the search of the vehicle.   He argues that the stop was not justified from its inception because Detective Dodrill lacked reasonable suspicion

---

[4]  After being sent to a lab for testing, this suspected methamphetamine was revealed to not be a controlled substance.

that the Defendant was a passenger in the vehicle that was stopped.   The Defendant further argues that the officers' search of the vehicle was improper because the search was conducted after the Defendant had been removed from the vehicle and placed in custody, and there was no reason for officers to believe that evidence related to the crime of arrest would be found in the vehicle given that they had discovered the firearms on his person.

The United States, relying on *United States v. Holmes*, 376 F.3d 270 (4th Cir. 2004), argues Detective Dodrill was justified in stopping the vehicle based on the tip he received from a reliable informant and his prior observations of the Defendant.   The United States argues that the evidence found during the search of the vehicle is not relevant to the charged offense and indicated during the suppression hearing that it did not intend to introduce such evidence during trial.

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV.   The Fourth Circuit has recognized that "[a] traffic stop constitutes a 'seizure' under the Fourth Amendment."   *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015).   Thus, a traffic stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."   *United States v. Ordonez-Zometa*, 141 F.4th 531, 548 (4th Cir. 2025) (quoting Whren v. United States, 517 U.S. 806, 810 (1996)).   "To satisfy the reasonableness requirements for an investigative detention, a traffic stop must be legitimate at its inception." *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017).

A traffic stop is legitimate at its inception if officers "have a reasonable suspicion. . . that a person they encounter. . . is wanted in connection with a completed felony."   *United States v. Murillo-Lopez*, 151 F.4th 584, 590 (4th Cir. 2025) (quoting *United States v. Hensley*, 469 U.S. 221, 229 (1985)).   Officers will not have reasonable suspicion and thus will not be justified in

5

initiating a traffic stop, if a person "vaguely fit[s] a suspect's description" or if officers only have "'a subjective hunch' that they might be a person named in a warrant." *Id.* Instead, officers need a reasonable suspicion to initiate a stop, which turns on "whether the circumstances known to law enforcement at the time of the seizure would lead a reasonable officer to act as he did." *Ordonez-Zometa*,141 F.4th at 549. Where the purpose of the stop is to apprehend a suspect with an arrest warrant, officers need a reasonable suspicion that "a person they encounter is the same person named in a warrant." *Murillo-Lopez*, 151 F.4th at 590; *see also Hensley*, 469 U.S. at 229 ("It is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.").

The Court finds that Detective Dodrill had reasonable suspicion to initiate the traffic stop. The circumstances herein are comparable to those in *Holmes*, where officers initiated a traffic stop after receiving information from a reliable informant that gang members, who had active arrest warrants, had arrived at an apartment complex in a green SUV. *Holmes*, 376 F.3d at 272. The Fourth Circuit observed that the Defendant could "not seriously dispute the constitutionality of the investigatory stop of his vehicle." *Id.* at 276. Although officers were unable to identify the individuals who entered a green SUV by observing their faces due to it being dark, based on their knowledge that the gang members traveled in the green SUV and the informant's tip, "the officers had more than sufficient reason" to believe that the gang members "had arrived at the apartment in an SUV fitting the description of that in which the gang was known to travel." *Id.* at 272, 276 n.2.

Although Detective Dodrill, similar to the officers in *Holmes*, was unable to definitively identify the man leaving the apartment as the Defendant, given the face mask, like those officers, he received information from an informant that contributed to his reasonable belief that the man leaving the apartment was, in fact, the Defendant. Specifically, the informant, who had given reliable information in the past, provided information that the Defendant was at Apartment 17 of the Maple Court Apartments. Further, as Detective Dodrill observed three women and a man, who he believed to match Defendant's physical characteristics based on prior interactions, leave the apartment, the informant called to inform him that the Defendant was leaving. Moreover, the informant previously mentioned that Ms. Fleshman provided transportation for the Defendant. Detective Dodrill had prior knowledge of Ms. Fleshman's vehicle and was able to identify her vehicle as one that left Maple Court Apartments. Together, the informant's contemporaneous information coupled with Detective Dodrill's knowledge and observations provided him with sufficient information to believe that the man who left the apartment and entered one of the vehicles was the Defendant for whom there were outstanding warrants.[5]

Thus, given all of the facts and circumstances known to Detective Dodrill at the time, he had reasonable suspicion to initiate the traffic stop. Accordingly, the Defendant's motion should be denied.[6]

---

[5] The Defendant argued that although Detective Dodrill testified that he made effort to include all pertinent facts in his report, some of the details to which he testified were not included in the report. However, having had the opportunity to observe and listen to Detective Dodrill's testimony, the Court found him to be a credible witness. He provided clear answers to questions from both parties, was not hesitant or defensive on direct or cross examination and appeared forthright when he could not recall certain details.

[6] Because the United States indicated that it does not plan to introduce any evidence during trial derived from the subsequent search of the vehicle, the Court will not address the search of the vehicle.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress Evidence* (Document 34) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:      June 4, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8